This is our second case of the day, 4-14-0703, James Smith v. Illinois Central Railroad Co., for the appellant, Attorney Peters, and for the athlete, Attorney Wilder. Counsel, you may proceed. The first issue I would like to address to this court, raised in the brief, is the issue of plaintiff's exposure at the Anarco plant, why he worked there. The court excluded any evidence, the only evidence that came into this case about Mr. Smith's exposure was he worked in the yard, outside at the railroad, that he worked in the wheel shop for about a year, and that he never remembered ever working with asbestos at any time he was at the railroad. The important evidence, the evidence that was excluded, was that he was exposed heavily, insufficiently, while he was at Anarco. He worked there three months, but you've got to remember what they're talking about here is they're saying the railroad is negligent for dust in Mr. Smith's atmosphere several hundred feet from the plant, but are excluding when Mr. Smith is dead in the plant. Counsel, if I'm recalling correctly, there was something in the briefs about the court excluding that because of other things that it would lead to, so I'm wondering what that was, and then the other question is whether or not there was any alternative proposed to the court to how that evidence might come in that addressed the concerns that the court had. Unfortunately, from the record, I'm not, I have not been unable, I've been unable to determine what the court's concern was about that testimony. I can only surmise, based upon my review of the law, that her concern was that the railroads would somehow try to blame Anarco as a party and tell the jurors that they should not find against us and they should find against Anarco even though they're not present. I assume that was her concern because that's the concern that's discussed in the case law, especially the Nolan case, but again, I don't see it expressed. But of course, in this case, the evidence is being offered for the purpose of sole proximate cause, not to indicate that Anarco was a tortfeasor. There was no intent and no attempt by the defendant to ever offer any testimony that Anarco was negligent in exposing Mr. Smith to anything, and so that concern, if that was the court's concern, was unfounded. At any rate, when we look at the specifics of this case and we look at Nolan, the way plaintiffs read Nolan is, if you don't have an expert to say that the disease process exists and was caused by the other exposure, you don't get to put on the evidence. But that's not what Nolan says. When we look at Nolan, the first thing I think we have to remember is that it was actually responsive to a rule that had developed that broadly excluded evidence. And what Nolan said is, that's wrong. This evidence should come in, and this idea that you're going to expand this rule and make it even more broad to exclude evidence is improper. And if it's sole proximate cause, the evidence comes in. And I think it's quite clear when it discusses the Cockney case in its finding and overrules that case where it says, if you have a reasonable alternative explanation for the disease, then that's all you need. Then the evidence comes in. What about the expert in this case who seemed to think that talking about the defendant and the anarchos being perhaps, put it this way, but testifying as if they were joint tort feasors? I mean, I think that's a good point. And if they were joint tort feasors, then that would mean that Illinois Central is still liable, wouldn't it? It would if they were joint tort feasors. But if I can show that somebody's a tort feasor, it's for the jury to determine whether the sole proximate cause of the disease is one as opposed to the other. So your argument is that the three months that the plaintiff worked for Yunarco before working for the railroad was enough to establish that Yunarco is the sole proximate cause of his subsequent disease? I do, Your Honor. I do. And I think the testimony supports it. When we look at what the doctor, the only testimony that the disease was caused by asbestos was from Dr. Ginsberg. And on his offer of proof, Dr. Ginsberg said, yeah, I know about Yunarco. I treat people from Yunarco. When someone says they're exposed to Yunarco, that's good enough for me. What do you know about the railroad? I don't know anything about it. I don't know anybody's exposure to the railroad. Well, but there was evidence about asbestos on the railroad property as well, wasn't there? There was evidence attempted to be presented that there was asbestos in the air from the Yunarco plant. And in addition to that, that there was asbestos used in other places in the railroad. But nothing to put Mr. Smith in proximity to anything sufficient to cause the disease that was alleged. Was the Nolan case argued to the trial court? I believe it was, Your Honor. What was the court's ruling on why you weren't going to be permitted to pursue this sole proximate cause defense? It was actually based on a long history. I think it's reflected in the record. This is not the first case like that that came about. And, of course, the problem with the court's ruling is the court took the position, and I don't know if it expressly said it in the record in this case, that under Nolan, we were going to try to get evidence in about his other exposure. We needed an expert to testify that that was the sole proximate cause of the disease. That's not what Nolan says. Nolan is a... What do you think Nolan says? I think what Nolan says is we have this rule, this Lifty rule, that the courts have misinterpreted as saying when you have an alternative exposure, unless you can show that that exposure all by itself caused it, then the evidence is excluded. Nolan came back and said that's wrong. It said, yeah, if you're going to try to use the evidence for the purpose of showing that there's another torque feeser, a joint torque feeser, that's wrong. But if you're going to show, use it for the purpose that sole proximate cause is the issue, then it comes in. In that case, there was an expert in some discussions about the type of asbestos that was used in that case, but the expert isn't necessary if you have sufficient evidence. And in this case, we had an industrial hygienist, the only one that testified, that said the testimony at the railroad was insufficient to cause the disease process asbestosis or to cause a plaque. And that was based on where Mr. Smith worked within the confines of the railroad, the positions that he held. Correct. The actual positions rather than some guy testifying who showed up 10 years later about what the conditions were. And we had other experts who said, yes, he has something on his lung that might be caused by asbestos. So we have one expert to testify that the exposure to the railroad didn't cause it because it wasn't sufficient, and we have another expert that says he has a condition that could be asbestos related to this pleural plaque. Who was the expert who said that the exposure to asbestos at the railroad would not be adequate to cause asbestosis? Mr. Romano, an industrial hygienist. That was the testimony before the jury? Yes. Yes. He also testified and offered proof that the inarclative exposure would have been sufficient to cause a pleural plaque in three months. And again, industrial hygienist unrebutted. And I guess that leads me to the thing that's most important here is, even if you, I mean, sole proximate cause, yes. But when you're arguing to the jury that the exposure on your railroad wasn't sufficient and that the sole proximate cause was exposure elsewhere, and you don't get to tell the jury what that exposure is, yet you tell the jury we believe he might have an asbestos-related condition, it puts you at a complete disadvantage and the jury is in no condition other than to accept that the condition itself was caused by your exposure. And we see that in plaintiff's opening when he lists all the various places the person works and omits IANARCO. And I would argue, Your Honors, that when you take the position to not tell the jury the truth, to withhold something from the jury, you need to have a pretty good reason. And in this case, there is no good reason, and it cut our defense. Following up on, or leading to the next issue I'd like to discuss is Dr. Ginsberg. Our trial was originally set in October. Less than 60 days prior to the trial, we get a disclosure of some medical records, and then we get a specific expert disclosure identifying specific treating physicians, saying it's a supplement of a previous disclosure, even though Dr. Ginsberg wasn't a treating physician at the time of the previous disclosure, he had treated in the interim. The documents were never produced to us prior to this short period of time before trial. The documents, as is ethically mentioned in the plaintiff's brief, the first set indicates from approximately 2011 or so that the person, Mr. Smith, was diagnosed with asbestosis, and then in 2013 we see that he's had this chlorofusion condition that's causing him some severe problems. These were never produced as they were required to be produced under the rules. The plaintiff in his brief admits that he got the documents from Honeywell in his brief. And the plaintiff himself obviously had them since he went to the treatment. At any rate, rather than arguing why the interrogatories weren't supplemented or what caused this to happen, what the plaintiffs argue is that the railroad had another burden on them besides relying on the discovery and the duty to seasonally supplement. What the railroad had to do was monitor other defendants' requests for records. And even if those records weren't filed, weren't given, and weren't even on Dr. Ginsberg, but on a different place where they had a physician named Dr. Ginsberg, that the railroad had to somehow, for some reason, follow up on these requests from Honeywell. And there is no duty anywhere in the law that requires the railroad to do that. In fact, the only duty recognized in law is the duty to seasonally supplement. And to this day we don't have a reason why. I'd also like to discuss the court's... Yes. And you complained about this to the trial court? We did, Your Honor. And the trial court rejected your argument, which was based essentially on it as a discovery violation? Correct, Your Honor. Did the trial court adopt the position of the plaintiff on why your complaint about Dr. Ginsberg's late notification should be rejected? I believe it did. I believe the court took the position that we knew or should have known that Dr. Ginsberg treated the plaintiff at the time Honeywell did a discovery in 2011. So Honeywell was an earlier defendant that settled? Correct, Your Honor. So the argument is you are supposed to be aware of that? The argument is because they did the records... On the file there's actually a document that says I want the records from a place where we already had records from. It wasn't a new place. But we'd already had the records from 2007 or 2008 and Honeywell does a request saying give me all your medical records at this period of time. And apparently the person produces the documents to him because Honeywell cancels the deposition. And that's what's of record. Plaintiff on his brief note indicates that yeah, I got the records from Honeywell or at the deposition or at that same time. But the argument that the court accepted is because Honeywell did this request, the railroad was somehow put on a... Or placed a duty upon the railroad and the plaintiff was excused from his duty to supplement and we had the duty to know that. In other words, we had to not only get the records but then parse through them and find out who was who and what was what. The original disclosure of experts just said treating physicians. It didn't list the names. So at the time physicians were disclosed, Dr. Ginsberg wasn't a treating physician. And we got no direct notice, no amendment of a disclosure that Dr. Ginsberg was a witness until shortly before trial. And that was filed so there must have been a reason for it. We asked for continuance of the motion and asked that Ginsberg be barred. Remedies were denied. That case mistried. And then in the interim we sought to have another expert, Dr. Geo, look at this information because it affects every part of the case. Sole proximate cause, everything where they actually have a diagnosis of asbestosis. And we were denied that remedy provided that we had the ability to have one expert look at an x-ray basically. When did you in fact have notice of Dr. Ginsberg? When the records were produced to us, 27 days before the October trial. Had it been more timely, let's say nine months, what would you have done? I would have done what I asked the court to do in October and that is I would have sent them to all my experts. I would have determined if my experts were appropriate. Where we actually have a treating physician diagnosing asbestosis, what I would have presented the jury with is an expert on diagnosing asbestosis. A pulmonologist of repute in the area. The guy I used, the guy listed in October that I wanted to use was a guy named Andrew Geo. When was this case filed? This case was filed, I would think 2007, maybe 2006. When did they go to trial? Went to trial in 2014. So over that seven years, extensive discovery is taking place and you got this information 27 days before trial? Well, we did discovery initially. Like I said, I think our discovery on the case was complete and the case I think was put on the trial document in approximately 2008. All this new stuff came up in 2011 and 2013 and it wasn't shared with us until 27 days before trial. Who was it shared with? Honeywell and the plaintiff's counsel. Was Honeywell, does the record show in some sense that Honeywell was in league with you on joint defense of some sort? I don't believe so, Your Honor, because that would not be the case.  So at trial it was just you? It was just me and the light was closed. To the affirmative defense, we also filed an affirmative defense for Mr. Smith's smoking. Mr. Smith was a smoker. Mr. Smith had shortness of breath and sometimes some limitations from his capacity to breathe. Cigarettes contributed to that. That was the testimony. Plaintiff's position and the court's position was that cigarette smoking does not contribute to asbestosis. We agree with that position. We do not believe, never asserted to anyone, that cigarette smoking causes asbestosis. But because it didn't cause the particular disease that plaintiff claimed caused the shortness of breath, our defense was straight. I'm not sure I understand. The claim here was the plaintiff developed asbestosis because he was exposed to asbestos and his exposure was the fault of the railroad. Right. Now, it's not clear if you concede that smoking can't be a cause of asbestosis. Why it should matter that he smoked or didn't. Here's an example I would give as Hansen's disease. If the complaint is the railroad caused Hansen's disease, which is leprosy, and one of his complaints is he has boils on his face, if the plaintiff did something else through his negligence that caused boils on his face, and you couldn't distinguish between the two, then contributory negligence would come into play. Because the actual diagnosis of asbestosis isn't what's important here. No one was awarded damages for asbestosis. People were awarded damages for pain and suffering and loss of a normal life and shortness of breath. So this argument isn't really an affirmative defense, defeating the claim. This is evidence that the claim should have been presented to mitigate damages. Well, the problem is it's indivisible. And under the FVLA, from a damage aspect, and I think plaintiffs make this argument too, from a damages aspect, if you can't differentiate between what part of the shortness of breath was caused by smoking and what part was caused by asbestos, then you can't have a division of the injury. You can't have an apportionment. That's not permitted under the FVLA. So what you can do is if the plaintiff was negligent in causing that problem or contributing to it, you can focus on the plaintiff's negligence because that makes them a joint tortfeasor in causing the very disease, or I shouldn't say disease, but the damage. In the damage he suffered. But it would still, if all this came in at best, and if it were true that asbestosis was caused by exposure to asbestos due to the railroad's negligence, at best all you'd be doing is reducing damages, wouldn't you? It would reduce a percentage based on the plaintiff's conduct compared to the defendant's conduct. But that's not an affirmative defense, is it? I believe that's an affirmative defense of contributory negligence. If you both concur to cause a particular item of damage, you are entitled to a reduction based upon each other's negligence. Looks like you're out of time, counsel, but you have more time on rebuttal. Jim Wilder for the plaintiff. We're asking you to affirm the verdict. You mentioned three things.  We asked Dr. Ginsberg, the records, Honeywell set up a notice of records deposition, 204, and it says we got the records so the depositions cancel. Once it copies, that's how it works. We asked for copies. Ginsberg was a subsequent treater. He wasn't treating Jim back in 2005 when this case was filed. We disclosed that treaters would testify. We got the records. The railroad claims they didn't get notice of two different record depositions of the facility that Honeywell claimed it had served notice on. Honeywell didn't settle. They got summary judgment on conspiracy. They didn't settle. They got summary judgment on conspiracy. I can be accused of many things, but I'm not in any boots with Honeywell in this litigation. We disclosed Ginsberg to the railroad. I don't think anybody else was left in the case. We disclosed Ginsberg. The railroad complained that they didn't have records, so we supplied them the records. It was 27 days before the October trial setting. Ginsberg was tendered for deposition, and he gave one October 8th. If we were here from the October verdict, the railroad might say, well, look, the time was short, but that case was mistried or that trial due to jury problems. I didn't oppose their motion, in part due to the timing on the issue of Ginsberg, because I thought a continuance will eliminate that. So Ginsberg gave a deposition October 8th. The trial didn't start until mid-January. So the records at that point, they'd had them for months. They had deposed Ginsberg more than three months before the start of the trial that we started in January. And in the reply brief, they say we were greatly prejudiced because the court denied us the ability to send the records to our experts. The court's order, and this isn't, I think, in the briefs, but it's in the record, volume 27, there's an order October 29, 2013, after the mistrial, where the court expressly provides that the defendant is allowed to furnish any new records. He said, we got to send one x-ray off. No. It was any new records to Dr. Sider, Dr. Wheeler, and Dr. Skillroot. Skillroot is a pulmonologist who they had retained and who was ordered to the trial. And then it says defendants required to furnish a deposition of each if they reviewed the new records. For whatever reason, they apparently never sent those records. So when they say in their brief, the court denied us the ability to send these to our experts, that's just plain wrong. The order is October 29, 2013. They had the right to send them. They didn't send them. Ginsburg gave a death more than 60 days, more than three months before this trial. Going to his second issue about the affirmative defense, smoking doesn't cause asbestosis. The claimed injury was asbestosis. And they cite some cases saying under FELA, smoking should come in for contributory negligence, even in the asbestosis case. Actually, one of the cases they cite to you is the Adams case. In Adams, there were two plaintiffs. One had lung cancer and one had mesothelioma. Smoking doesn't cause mesothelioma. Smoking causes lung cancer. And the court in Adams said, I'll allow the contributory negligence as to the lung cancer case, because both smoking and asbestos cause it, but not as to the mesotheliomas. Why shouldn't they be permitted to mitigate damages by introducing evidence of smoking? They should, and they did. And I'll talk about that in a second. And with all respect to counsel I've known for a quarter of a century, their brief has a lot of characterizations, which if you look at the record, as an example of the Ginsburg thing, it's not there. But smoking came in without restriction in this case on causation and damages. Adams said, for the disease that's not caused by smoking, you can't plead smoking as an affirmative defense in causing the disease that isn't caused by smoking. That's just what Judge Foley did here. This was actually two plaintiffs at the time of trial. Jim Smith had asbestosis. She said, you can't get contributory negligence for smoking in connection with development of the disease that smoking doesn't cause. The second plaintiff was the Nassiger family for John Nassiger, who had lung cancer, and she allowed the railroad to plead and to argue and instructed the jury on contributory negligence as to lung cancer, because smoking causes lung cancer, in fact causes it with asbestos. Now going back to your question, Justice Steinman, there was no restriction here on smoking. It came in from the start. They got to talk about it in opening. They got to question Dr. Ginsburg about it. They got to argue to the jury on causation and damages. So in terms of mitigating damages, in terms of trying to say that the shortness of breath was due to the smoking, you know, it was all there for them and they took advantage of it. I thought you said Judge Foley wouldn't allow them to do it. Not as contributory negligence, Justice Foley, but as to causation and damages. I didn't object to the idea that came in as to causation and damages. In other words, they could say, and in fact they had four retained experts, who aren't mentioned all that much in their briefs, four retained experts who said Jim didn't have asbestosis. All his damages were due to smoking, and that's what they argued to the jury, that he didn't have asbestosis. But, in other words, following up on Justice Steigman's discussion, it's one thing to say Smith is at fault because he smoked cigarettes and compare his negligence to the railroads because he's also at fault in causing his asbestosis. No, because smoking didn't cause asbestosis. But in terms of being able to argue the problems Jim had are due to smoking and not asbestosis, they were allowed to argue that. And when they say, well, Wehmeyer, they cite this court's decision on Wehmeyer, Wehmeyer was a case where the trial judge initially didn't allow anybody to say whether or not the plaintiff had smoked, and then eventually opened it up just as to reduce life expectancy. It came in in a restricted fashion. Here it came in unrestricted from the opening statement by, actually by myself, I think. I mentioned that he smoked, but smoking doesn't cause asbestosis. They mentioned it in their opening, and that was basically one of their positions with the jury, that this man smoking was why he had the problems in terms of shortness of breath. So it came in on causation and damages. It just didn't come in as an affirmative defense of contributory fault. So, he started off by saying, going to the sole proximate cause, he started off by saying Jim was heavily exposed at UNARCO, based on this record, and their brief talks about his massive exposure at UNARCO. And it talks about how, not Dr. Amato, Amato can't testify on causation because he's an industrial hygienist. He doesn't give causation testimony. Actually, if you look at the record, they filed Jim's discovery deposition and offer proof. Jim, I don't know where they get the three months. I mean, I looked at it twice last night, thinking maybe my eyes are old, and it's in there. He said a few months, at page 18. I guess that's at least two. I'd say at least two, and it may have been four even. This three, I'm not sure. But, so he had exposure in 54 for a few months. They say, well, Amato said, well, he was massively exposed. Actually, if you look at Amato's testimony, he was asked in the offer of proof by counsel, how long did Mr. Smith work there? A couple months? Amato, no, he worked there, as he said, a little less than one year. They went right on. So their expert thinks he was there for about a year and says, you're familiar with the level of exposures at UNARCO? Yes. Do you have an opinion, with a reasonable degree of industrial hygiene certainty, whether Mr. Smith received an exposure to express this greater than 25 fiber years at UNARCO, which some people would say is what's needed for asbestosis? The answer was, depending on his job, yes. Then they never asked him about his job. Jim's testimony in the discovery deposition is that the only thing he remembered doing was putting thread into a machine, and he remembered it was located near the offices. There's no suggestion in his record that he was unloading the boxcars, feeding the raw asbestos, shoveling the ground up asbestos, cutting the pipe covering. And when they got that answer, they moved on. They didn't even ask. They didn't say, well, here's his job. He says he was putting thread, running thread into it. Yet from that testimony, you now have the testimony that's in this record as to Jim's massive exposure at UNARCO. Well, now, there were people who testified, didn't they, that when you looked at the UNARCO plant, you couldn't even see people moving around because the dust was so thick. That's Winstead. And there are portions of the plant that are like that. And I've spent 30 years arguing there's portions of the plant who are like that. And Dr. Ginsberg's right. You'll get some exposure there. But not every job was equal in the plant. In other words, and I realize, there were jobs where you unloaded boxcars and opened the bags and fed them into the feeders at the east end of the building. And there were jobs where you ran a bandsaw through the pipe covering. There were jobs where you sewed blankets in another portion of the facility. And Winstead is right. There's times you couldn't see. That's the testimony you're thinking of, Your Honor. There's times where it looked like there was a fog in there and a haze. But as far as whether Smith did any of that, all we have in this record is the only thing he remembers from his brief time is putting thread into a machine that made rope. My point is they didn't even ask the industrial hygienist. The industrial hygienist who gives this opinion, number one, doesn't even have the amount of employment, right? He's got even a little less than a year. He isn't even asked about, well, what was his job that he recalls? And his answer, was he exposed enough to cause asbestosis? Well, there's a question of the persuasiveness of this testimony, not its admissibility of the sole proximate cause defense. Well, the sole proximate cause defense, Justice Steigman, then you get to the issue is, is the jury going to determine which is the cause? Does the juror make that determination between two exposures as to what is the cause? And I suggest Nolan actually stands for the premise that you can get competent evidence from lay people about exposure. But in terms of saying that exposure is enough, that it's the sole cause of this disease and not the other one, that's what we have experts for. And that's why Nolan at 242, they talk about you can introduce competent evidence about others as causal factors, the conduct of another causative factor. And that's, I think, at 443, 442 and 443. And, of course, in Nolan, that's exactly what they had. The guy worked with Bois McLean boilers on occasion. He also worked with insulation. And Dr. Sawyer testified in an offer of proof the insulation was the cause, the sole cause of man's disease. Who said that in this record? They say they've got a sole proximate cause defense. Who said that in this record? Dr. Ginsberg, in an offer of proof, the treating doctor, he says that they were both, and you referenced this, he said that none of them were a sole cause. He referenced it like cigarettes. It's both together. If he was exposed at UNARCO and if he was exposed at the railroad, it's the combination of causes. Well, why couldn't the jury have concluded that his exposure at UNARCO is so intense from how the conditions were at this plant for however many months he was there, and consistent with the other evidence that there was some doubt about his exposure at all to asbestos at the railroad, that, in fact, the sole proximate cause of his injury was his time at UNARCO. And he was working outside at the railroad his entire career. He wasn't in a building like he was when he worked at UNARCO, is that correct? No. He was in the wheel and axle shop for a year. Then he worked at times in the storeroom, then he was in the scrap dock. I thought he testified himself. Most of it was outside, yes. But he worked in the wheel and axle shop rolling wheels in and out also. He said most of his employment was outside. Rolling wheels inside and out. That seems to me to mean he was in there, maybe he was in there for whatever time it took to put the wheel down, but generally speaking, he worked out in the yard. I think that's probably true. Most of the time he did. In fact, we had a diagram. It's at 169. And I know your question is still pending. Go ahead. Exhibit 169 is the Union asbestos plant. And Jim spent three years. This was the plant. He worked in the wheel and axle shop right here, the building closest on this side. The storeroom, the building closest on this side. And the scrap dock, which was right on this side. For three years he was in the ring around the building, which testimony is it gave off dust. Now, going back to your question, Justice Seidman, jurors, I would suggest, don't typically have the expertise to decide, absent some assistance from expert testimony. I mean, if I call Jim Smith and say, Jim, you were exposed to asbestos at the railroad, yes. Did that cause your disease? Yes. You know, I mean, he's not qualified to give that. You'd need competent testimony. He's competent to talk about exposure. A layperson could talk about that, whether it be Jim or Winstead. Well, let me see if I understand what you're saying. Your argument in response to Mr. Peters isn't that they couldn't assert sole proximate cause and offense as a matter of law, but they failed to present sufficient evidence in support of it to get to the jury? Failed to present sufficient evidence. Number one, what they got in their briefs isn't the record even from their offers of proof. And number two, they had no one who would say, I'm qualified to give opinions on causation, and in my opinion, the sole proximate cause was his exposure that he talked about in his discovery deposition at UNARCO. They didn't do that. I mean, they had four retained experts, and I think it's striking. They didn't do any offers of proof to them. They didn't offer proof to Dr. Ginsberg that says both are implicated. They didn't offer proof to an industrial hygienist who isn't qualified to talk about causation and who didn't even have his facts right. And they didn't offer proof to Jim just to say that he worked there for a few months. I mean, they had four retained experts, two radiologists, a pulmonologist, two pulmonologists, Dr. Jacobs was the other one which I haven't mentioned. They did no offers of proof to them because, unlike in Nolan, they said, Smith doesn't even have asbestosis. And that's what I thought your take in your brief is. They were arguing he didn't have asbestosis, and therefore they couldn't have a sole proximate cause defense. But is there any case that says you can't defend any alternative? So in other words, if the jury doesn't buy their argument that he didn't even have asbestosis, so let's say he says to the jury, and if you do find that he had asbestosis, we weren't the cause, it was UNARCO. Is there any case that prohibits them from making that defense? I don't think there's a case appellate decision since Nolan on that. But even there I'd say, which expert is going to say that? They had no expert who said that. We took their depositions. Putting that aside, on the legal issue, you've taken the position their defense was no asbestosis, therefore sole proximate cause couldn't be raised because that was their defense. Well, if they had had the alternative that you suggest. Well, they tried to. I mean, they were raising sole proximate cause with Judge Foley. She denied them. She denied them because, and they say in their briefs, we first brought this up in our L.A.'s brief. Actually, we brought it up, they say we first brought it up in the briefs. We brought it up October 1st, the motions in limine, our paragraph 4. And part of what we argued is nobody in this case has been disclosed by them that the sole proximate cause would have been UNARCO. They had four retained experts. They never did offer proof with them. None of them had that opinion. But I don't think Nolan says you have to have an expert. You're citing Nolan for the proposition. You have to have an expert who's going to say that. But Nolan says other employment that should come in when we have sole proximate cause defense. But who decides, who testifies about causation, Justice Pope? I mean, do lay people decide the causation without any assistance from experts in terms of the dose and so on? Well, you had lots of expert testimony about asbestos causing asbestosis. You did. You had lots of expert testimony, a lot of testimony about what a terrible place UNARCO was with regard to exposure to asbestos. Isn't that correct? True. Well, then when you're saying the causation testimony, why isn't that before the jury on causation testimony as asbestosis being caused, if it was, at UNARCO? Because I would suggest that last thing you said, you're going to need an expert, just as I need an expert. If all I do is put on, if I file a complaint and say Smith was exposed to asbestos at the railroad and I put on his employment at the railroad and I put on the testimony we did about exposure at the railroad, both from railroad activities and drifting out of UNARCO, if that's all I have at the end of my case, I'm getting directed out. Yeah, but that's not all we have. And what you're missing in that example is the fact that there was lots of expert testimony about exposure to asbestos causing asbestosis. Isn't that right? Okay, I put on Dr. Frank who testified generally asbestos can cause asbestosis. Well, just to be clear, why does it have to be his experts and his testimony to establish the causation between asbestosis is caused by asbestos? And then you have the question, well, where was the exposure to asbestos? And we have lots of testimony about the UNARCO plant and what a terrible place it was, and he worked there for a few months and so forth. Why isn't that enough of a connection from which an inference can be drawn? Well, that could have been the cell craftsman's cause. You need somebody, I would suggest, to say asbestosis, this man's asbestosis was caused by UNARCO solely and not by the railroad. It doesn't have to be his experts. He tried with our treating doctor. He didn't want to go there with his own experts. Well, I'm not sure I understand why that's the case. If the connection is established between asbestosis and asbestos, and we have, through your experts, let's say, clearly that was what they said, and we have testimony about what a terrible place this was, UNARCO, for exposure to what your experts say causes asbestosis. Why do we need someone to additionally say, by the way, this is the cell craftsman's cause of his asbestosis, as opposed to letting that be a question for the jury? Especially where, can I just add this, especially where part of your case is that the UNARCO plant is discharging asbestosis into the railroad yard, and he's been exposed to UNARCO fibers that way, and the railroad didn't provide a safe place for him to work as a result of that exposure. And I want to add, too, I mean, you focused on the fact that the railroad was aware of how bad it was as it relates to asbestosis, and, you know, through the lease testimony, and that they did not protect their workers. And so wasn't it established that there were huge amounts, to use language from the brief, of the asbestosis at the UNARCO plant, and that basically, to me, the crux of it was, anyone over there is going to be exposed to the point that they could become ill because of the nature of it flowing from and the dust circulating within. I'm out, but I'd like to respond. Go ahead. Go ahead. Move on to here. I think, number one, and if I missed some portion, I think, number one, with all respect, Judge, what you're missing is somebody's got to say Smith's asbestosis is caused by something. I mean, the jury just doesn't go back and say without expert testimony. I'd get directed out if I didn't have an expert that said Jim Smith's got asbestosis. This record, the only testimony, even in their offer of proof, is from Ginsberg, who says even if he was exposed at UNARCO, it would be a combination. It's not a sole proximate cause. He never got anybody to say it would be the sole proximate cause because he only tried it with our treater and never tried it with Dr. Frank, whose video was played, and never even asked his people about it. So it doesn't have to be from his experts, but it's got to be from somebody. It's not in this record. Massive exposures, it differs from one to the other in the plant, but yeah, I say everybody in the plant, Dr. Ginsberg said, everybody in the plant would have some exposure. He was asked, could it be sufficient to cause asbestosis? Possibly. Could it exclusively cause it? He'd say, that's hard to say, and then he said both would be causes, and that's his testimony. Again, this idea of massive and heavy exposures to Jim Smith is not in the record, Judge. I mean, if you look at Smith's testimony, and I'll admit, Justice Pope, I forgot yours, and I'd like to address it. I think it was the fact that the narco dust was coming over from the plant. You were able to put that in as evidence of an unsafe workplace, but yet they were prohibited from having any testimony that he actually worked inside that plant for three months or two months or however long. If they had anybody who said that was the sole cause, I wouldn't object. They had four defense experts who didn't go there, and they didn't try to go there. So I want to be real clear on this, because this is a real important point. Your contention is that there must be expert testimony saying this is the sole proximate cause. It can't be inferable from the other testimony in the record about where the disease, how disease is caused, that asbestos exposure causes asbestosis. Not just from general asbestos exposure causes asbestosis, because if all plaintiff put on was just general asbestos causes asbestosis, I was exposed to asbestos. Therefore, I'm good and I win. I wouldn't be able to get to the jury in that. And so they can get competent evidence of exposure in. Somebody's got to tie it up and say it's the sole proximate cause, either cross-examination of my people, which he didn't get, or an opinion from their side, which he never disclosed and he never attempted to disclose. We're asking you to ask your firm, thank you. Thank you, counsel. Mr. Peters, rebuttal? First, before we get into the inarticulate issue, talking about Dr. Ginsburg, plaintiff alleges that all these problems were solved based upon a mistrial. No one's ever explained why we didn't get the documents. To this day, no one's said I have a duty to seasonally supplement and I didn't do that because of X. We're still here. But the plaintiff now says, yeah, but because of that mistrial, I think I can fix it. The defendant had a right to have experts already disclosed look at the issue. The people he mentioned were Wheeler, Sider, and Skillroot. Wheeler and Sider are both radiologists. Dr. Skillroot is a local doctor, much like Dr. Ginsburg, who did the examination, treating examination. You can't have an expert from, I guess you could, but it's unlikely you're going to get an expert from North Carolina, like we asked the judge for, to come and express opinions, examine a patient, then express opinions in an expert and knowledgeable fashion of a researcher in asbestos, a mind in asbestos, a publisher in asbestos, to tell you what the impact of that information was. We asked for that, and that was denied. So the Dr. Ginsburg thing wasn't a manual follow-up thing. It's a no explanation and we were harmed. Okay, so summarize for us what in your offer of proof at trial supports your sole proximate cause defense. Sole proximate cause, it actually comes together. First of all, you have to ask yourself what we have to do, and I'll address what actually has to be done later, but getting to the actual offer proof that's necessary. In this case, we look at Dr. Ginsburg. Dr. Ginsburg testified. I think Counsel's accurately summarized what he said. He specifically indicated that being a INARCO enough is sufficient for him to say it's asbestos exposure and it's sufficient for him to say that it was a cause or could cause asbestosis just by itself. So we have testimony of cause from Dr. Ginsburg. Now, he's the only one who testified at cause to anyone. And remember, he didn't know how much dose. The person who testified to asbestosis in this case had no idea what dose was necessary to cause the disease, no idea. But he said specifically that a proximate cause could very well be INARCO. Then we had another expert, an industrial hygienist, who specifically said based upon the documents I'm provided. Now, it would have been nice to have an opportunity in front of the jury to argue whether it was two months or three months or a little bit less than one year and what a discovery deposition said and what medical records said and what the plaintiff said at various times. We didn't get that opportunity. The evidence was excluded. What Mr. Amato said specifically was that the dose received at the railroad based upon the information that he was provided, depositions, the records, et cetera, was insufficient to cause asbestosis with respect to Mr. Smith. He did go further, though, with INARCO and say, well, let's put it together. We have one person who said the dose is not sufficient to cause asbestosis. We have another person who says, I don't know anything about dose, but the dose at INARCO, someone's at INARCO, that's asbestos exposure, and that is sufficient. We're already there. But we go further. Mr. Amato also said that the INARCO exposure that he got from the records, from his review, his expert review, also established that those records, that information was sufficient, his exposure was sufficient to cause the plaque, this asbestos-related disease where the jury is sitting there in the box. And they've heard us indicate the person doesn't have asbestosis, but they've heard us kind of agree, or at least not dispute, that he's got this evidence of asbestos exposure around his lung, this plaque. But we don't get to tell them that that was caused by INARCO, this plaque, even though the claim is for asbestosis. We don't get to tell them that even though we might agree he had asbestos exposure, we don't think he had it by us. Oh, but by the way, we're not going to tell you where it happened. And what jury is going to believe that? If they don't know where the source of this formation inside this person's lung is, what are they left to conclude? And as the Justice pointed out specifically, they're left to conclude that an exposure from hundreds of feet away from a plant is greater than the exposure from being right inside this dust cloud. Thank you. Thank you, Council. We'll take this matter under advisement to be in recess.